UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BARBARA GRAY,<br>   next friend of minor child D. E.., *et al.*,<br><br>       Plaintiffs,<br><br>       v.<br><br>DISTRICT OF COLUMBIA,<br><br>       Defendant. | Civ. No. 06 – 0144 (RMU) |

**DEFENDANT'S CONSOLIDATED REPLY TO PLAINTIFFS' OPPOSITIONS
TO DEFENDANT'S MOTION TO DISMISS
AND TO
<u>DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

Comes now the Defendant, District of Columbia, by counsel, and replies to the "Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss" filed March 7, 2006 ("First Opposition"), and the "Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss the Amended Complaint" filed March 20, 2006 ("Second Opposition").

<u>**BACKGROUND**</u>

On January 27, 2006, the Plaintiffs filed a Complaint seeking reimbursement for attorney's fees from the District of Columbia, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, *et seq*., 28 U.S.C. §1331, and 42 U.S.C. §1983.  Plaintiffs claim that they were prevailing parties in administrative hearings brought pursuant to the IDEA; that they submitted petitions for attorney's fees to the District of Columbia Public Schools ("DCPS"); that the amount requested in each

of the fee petitions was greater than $4,000; that DCPS did not pay any of the plaintiffs above the "fee cap" of $4,000 set forth in Section 327 of the District of Columbia Appropriations Act of 2005; and that, therefore, plaintiffs are owed the balance between what they requested and what they have been paid.

On February 24, 2006, the Defendant filed its Motion to Dismiss the initial Complaint ("First Motion"), to which the Plaintiffs' responded in their March 7 First Opposition. In light of an amendment to the Complaint, the Defendant filed its Motion to Dismiss the Amended Complaint on March 10, 2006 ("Second Motion"), to which the Plaintiffs responded in their March 20 Second Opposition. The Second Motion and the Second Opposition each incorporated by reference their respective related prior filings.

Following is the Defendants's consolidated reply to both of Plaintiffs' opposition pleadings.

**ARGUMENT**

**I.   Plaintiffs Have Failed to Show Their Complaint Is
Adequate to Establish a Claim Pursuant to 42 U.S.C. §1983.**

In any Section 1983 action against a municipality such as the District of Columbia, the burden is on the plaintiffs to establish that the municipality has a custom or practice that caused an alleged constitutional or statutory violation. See, e.g. Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658, 694 (1978); Daskalea v. District of Columbia, 227 F.3d 433, 441 (D.C. Cir. 2000). As shown in the Defendant's First Motion (pp. 3-5), the Amended Complaint does not even contain a suggestion of a claim based upon any custom, policy statement, or procedure of the District of Columbia which has deprived plaintiffs of any constitutional or statutory right.

2

The First Opposition (pp. 3-4) challenges the Defendant's citation of <u>Walker v. District of Columbia,</u> 157 F.Supp.2d 11 (D.D.C. 2001), as representing the test to be applied in measuring the adequacy of the Amended Complaint vis-à-vis Section 1983. The Defendant will not here repeat its First Motion presentation on the point – much of which the Plaintiffs simply ignore. Suffice it to say, within the past week, yet another decision in this Court – in <u>Savoy-Kelley v. Eastern High School</u>, Civ. No. 04-1751 (D.D.C. April 14, 2006) – applied the <u>Walker</u> test. In dismissing a Section 1983 claim included in a complaint asserting District violations of IDEA, Judge Kessler there found, among other things, that the "Complaint makes no mention of any 'persistently egregious' conduct on the part of Defendant, or any 'custom or practice' giving rise to an IDEA violation." <u>Id</u>., Mem. Op. at 10.

So here, the Amended Complaint is similarly devoid of any such assertions or explanations. To be sure, the Opposition claims that the Amended Complaint "set out a custom or practice . . . that [is] the basis of the Section 1983 claim." Opp., p. 3. But this is simply pleading rhetoric, arguing how the Plaintiffs believe the entirety of the Amended Complaint should be interpreted. Nowhere is there an identification of any specific part of the Amended Complaint that asserts an improper "custom or practice," much less demonstrates any "persistently egregious" conduct.

Moreover, even the First Opposition's after-the-fact pleading rationalizations are themselves contrived. At one point the forbidden "custom or practice" is said to be "non-payment of attorneys fees to prevailing parties at IDEA hearings" (First Opposition., p. 4), while elsewhere the "custom or practice" it is said to be "non-payment of attorneys fees over $4,000.00 and non-recognition that DCPS owes this money to the Plaintiffs,

3

regardless of the ability to actually pay" (id.). The first is just silly. There are absolutely no Amended Complaint assertions (or truth to, or support for, the conclusion) that DCPS does not pay "attorneys fees to prevailing parties at IDEA hearings." Indeed, many of the Plaintiffs' counsel here in fact received a payment; the Plaintiffs simply dispute the amount of payment.

The second so-called "custom and practice" is equally nonsensical. DCPS (the District) *cannot* – by direction of Congress – pay "attorneys fees over $4,000.00," and a "custom or practice" of honoring a Congressional prohibition – or of "non-recognition that DCPS owes" money that it is prohibited from paying – can hardly represent a violation of Congress' own Section 1983. The frivolousness of the Plaintiffs' view in that regard is confirmed by their position that "evidence" of "non-recognition that DCPS owes this money to the Plaintiffs" is found *in the Defendant's having filed the First Motion opposing the Plaintiffs' legal view!* First Opposition, p. 4. The Plaintiffs, therefore, would have the Court construe Defendant's counsel's conduct of litigation to be proof of a District "custom or practice" violative of Section 1983. Nonsense.

The First Opposition (at p. 4) also relies on Sparrow v. United Air Lines, Inc. 216 F.3d 1111 (D.C. Cir. 2000), to defend the adequacy of the Amended Complaint with respect to a Section 1983 claim. However, that decision is wholly inapposite. In Sparrow, where the plaintiff alleged a job termination because of racial discrimination, the court was clear that the complaint included a number of allegations "fleshing out specific claims of both discriminatory failure to promote and discriminatory termination." Id. at 1116. Thus, the court concluded that the plaintiff had sustained his burden under Rule 12 (b)(6). By contrast, there is no such specificity in the Amended Complaint here.

4

Indeed, the only references in the Amended Complaint to Section 1983 are contained in the jurisdictional paragraph and in the request for relief. Neither of the two Counts refers to Section 1983, and the remaining 288 complaint paragraphs only identify the parties; detail dates when administrative hearings were held, assert that plaintiffs were prevailing parties, posit that they submitted petitions for attorneys' fees to DCPS, and state that they were paid by DCPS, but not for the full amount that they had requested.

The failure of the Amended Complaint to provide the minimum necessary to survive a challenge to a Section 1983 claim is clear. E.g., Savoy-Kelly v. Eastern High School, supra, Mem. Op. at 10-11.

## II.     Defendant's Arguments Regarding CFSA are Not Moot.

The Complaint initially filed named sixty five plaintiffs, twenty three of whom were identified as the District's Child and Family Services Agency ("CFSA"). In the Amended Complaint filed February 23, 2006, Plaintiffs' attorneys substituted their names as next-friend Plaintiffs for that of the CFSA in twelve instances.[1]

In its First Motion (pp. 5-7), the Defendant showed that the specification of CFSA in the original Complaint was unauthorized, improper and a violation of both Fed. R. Civ. P. 11(b) and Rule 3.3(a)(1) of the District of Columbia Rules of Professional Conduct – positions reiterated in the Second Motion (at pp. 4-5[2]).

The oppositions do not respond specifically to any of the Defendant's assertions, nor do they address the propriety of the initial Complaint under the cited court rules. See

---

[1] For T.S., P.T., D.H., V.H., T.L., M.D., A.W., D.L., M.E., J.H., N.W. and K.S. As to the remaining eleven minors for whom CFSA was initially identified as next-friend plaintiff, other individuals identified as next friends in the caption, but described in the body of the Amended Complaint as parents, were substituted for S.B., J.G., E.S., D.G., K.T., D.E., G.M., J.A., J.F., T.S. and M.A. (Amended Complaint paras. 100, 128, 164, 172, 188, 208, 224, 228, 244, 260, 268.)

[2] Page references to the Second Motion are to the page numbers shown on the efile record of that document.

First Opposition, p. 6; Second Opposition, p. 3.  Instead, it is asserted that all such matters are moot, since the initial Complaint was subsequently amended to substitute Plaintiffs' counsel for CFSA. Id.

Improper professional conduct, however, is not excused simply because changes were made to the initial complaint when the impropriety was discovered.  Moreover, the Plaintiffs' efforts to excuse the initial Complaint's unauthorized identification of CFSA are neither coherent nor adequate.  Indeed, while pleading rationales are now offered why *counsel* was substituted for CFSA when "counsel realized that a conflict existed" (Second Opposition, p. 3), it remains unexplained how CFSA was initially named for eleven minors when *parents* were later found and substituted. See footnote 1, supra.

Ultimately, it remains that identifying any individual or entity as a plaintiff in a filed complaint is a representation to the Court of the truthfulness of what is submitted.  The fact of  initial representations both unauthorized and known to be untrue remains to be dealt with here, and cannot be papered over by later curative actions.

**III.   The Second Opposition Fails to Show the Substitution of
        Plaintiffs' Counsel for CFSA to be Proper.**

   **A.   The Second Opposition fails to demonstrate that
          Plaintiffs' counsel have either the authority or the
          capacity to appear as parties-plaintiff in this case.**

In the Amended Complaint, Plaintiffs' counsel named themselves as next-friend plaintiffs for twelve students – T.S., P.T., D.H., V.H., T.L., M.D., A.W., D.L., M.E., J.H., N.W. and K.S.  In its Second Motion (at pp. 5-12), the Defendant challenged the capacity of Plaintiffs' counsel to so appear.  The Defendant argued that counsel's reciting their status as "educational advocates" appointed by the Family Division of the Superior Court in abuse and neglect cases did not itself establish their authority either to initiate the

6

DCPS due process hearings on which the fee claims are based, or their authority to appear here as parties seeking attorneys' fees reimbursement under IDEA. Id.

The Second Opposition submits copies of Superior Court appointment orders for eleven of the twelve students identified above; *nothing* is provided as to P.T. Three of the eleven orders (as to M.D., N.W. and K.S.) identify Ms. Dalton as the appointee, while the remainder identify Mr. Houston. As to those eleven students, the Second Opposition (at p. 4) summarily asserts that the appointing orders empowered counsel's filing for DCPS due process hearings, and later seeking attorneys' fees:

> The Court Orders state that the educational advocates are appointed as "Guardian, Limited for Educational Purposes" and are authorized to perform whatever duties are necessary to determine the student's educational needs and ensure proper placement. This language in the Court Orders covers the authority of the educational advocate to [1] file a due process hearing and [2] later seek payment of attorneys' fees from DCPS.

On their face, the orders do neither. In almost identical fashion, the orders each first state that the individual is "appointed as Counsel for Educational Purposes." While the initial ordering provision generally states that the appointment is "to facilitate and determine the educational needs of the Respondent and to insure that he is properly placed," every of the succeeding, qualifying ordering clauses specifically describe events and activities relating to the specific Superior Court proceeding. As to T.S., for example, Mr. Houston was

> . . . authorized to attend and participate in, and provide reports in connection with, *any court hearing held in this case.*

> . . . authorized to investigate fully the facts *of this case*, to review both the case and social records pertaining to this case, subject to the provisions and proscriptions of D.C. Code Sections 116-2331032 and 2336 ((1989 Repl.) to review and obtain copies, if necessary, of respondent's educational records, medical records, social worker's reports, psychiatric and psychological

7

>evaluations, or other records pertaining to the respondent that are necessary to the performance of the Educational Advocate's duties.
>
>. . . [empowered] to authorize testing, screening, and whatever else is necessary to perform the duties *incidental to the appointment*. [Emphasis added.]

There is nothing on the face of the order, reasonably read, that authorizes the initiation of discrete DCPS due process hearing proceedings under IDEA, and the Plaintiffs have shown no such relationship here.

Moreover, the disparity in timing of the appointing orders relied on and the administrative hearings initiated reinforces uncertainties in that regard. The D.H.. appointing order, for example, was issued July 3, 2001. Yet the due process hearing said here to have been authorized by that order was not requested until *more than two years later*. See Amended Complaint, para. 148. Similarly, the IDEA hearings for A.W., D.L., M.E. and J.H. were each held *some two years* after the respective appointing orders. See Amended Complaint, paras. 148, 184, 200, 204.

Neither do the court orders provided authorize pursuit of IDEA attorneys' fees in this Court. As stated in the Motion (p. 10),

>. . . Rule 42(d) of the Superior Court directs that attorneys fees for time expended pursuant to an appointment are to be submitted to, and paid by, the District Court – and subject to the limitations of D.C. Code §16-2326.01. And the Superior Court's Plan for Furnishing Representation in Neglect Proceedings in the District of Columbia ("Plan") – which appears on the Superior Court's website, and is attached hereto as Exhibit 1 – similarly makes clear that that court may, in certain circumstances, appoint "a special education advocate to pursue the child's educational needs," but that those attorneys are "subject to compensation limitations set forth in D.C. Code §16-2326.01" (Plan, pp. 3-4), and that compensation for appointed services is to be addressed to Superior Court (Plan, pp. 8 et seq.). [Footnotes omitted.]

The only direct assertion otherwise in the Second Opposition is the following (at p. 5):

>The [Superior] court appointed the educational advocates with the understanding that the attorney would seek fees from DCPS and not the Superior Court under the

8

>complex litigation exception to the guardian *ad litem* fee rules. (*See* Def.'s Ex. 1: Plan § II(D)(2)(c); Pls.' Ex. 1.)

But nowhere is there any support for the assertion of an "understanding" of any kind that counsel would "seek fees from DCPS and not the Superior Court."

The suggestion that such an "understanding" can be deduced from "the complex litigation exception to the guardian ad litem fee rules" is patently meritless. Section II.D. of the "Plan for Furnishing Representation . . ." attached to the Second Motion describes how and to what extent appointed counsel will be compensated for services rendered pursuant to an appointment. Subsection D(1) of the Plan (p. 8) explains the processes applicable to fee applications to the Fiscal Officer, while Subsection D(2) provides as follows:

>(2) Maximum fees for counsel.
>    (a) Maximum hourly rate for counsel. The maximum hourly rate for attorneys shall be the fixed rate established by D.C. Code §11-2604(a)(2001), . . . as such statute may from time to time be amended.
>
>    (b) Maximum amounts for counsel. The maximum compensation to be paid to an attorney for any neglect proceeding or termination of parental rights case shall not exceed the maximum amounts established by D.C. Code §16.2326.01(b) (2001), . . . as such statute may subsequently from time to time may be amended. . . . [3]

The Second Opposition, however, asserts that wording in the appointing orders for V.H., T.L., M.D., A.W., D.L., M.E. and J.H ("for the purpose of billing the District of Columbia Public Schools this matter is hereby certified as a Complex Litigation"[4]) represented an "exception" to the requirement to apply to the Superior Court for fees – an

---

[3] See also Plan, pp. 3-4:
>The Court may also appoint a special education advocate to pursue the child's educational needs. Appointment of these attorneys . . . is subject to compensation limitations set forth in D.C. Code §16-2326.01.

The current fee cap in D.C. Code §16-2326.01(b)(1) is $1,600.

[4] Such wording does *not* appear in the appointing orders for T.S., D.H., N.W. or K.S.

9

"exception" said to exist under Subsection D(2)(c) of the Plan. Second Opposition, p. 5. Tracking D.C. Code §16-2326.01(f)(1), that part of the Plan (p. 9) states, in relevant part:

> (c) Waiving maximum counsel fees. Payment in excess of the statutory maximum amount may be made for extended or complex representation whenever such payment is necessary to provide fair compensation. A request for excess compensation shall be submitted by the attorney for approval by the Chief Judge of the Superior Court upon recommendation of the presiding judge in the case.[5]

On its face, the Subsection D(2)(c) of the Plan does not create an "exception" *to applying to the Superior Court* for fees. Instead, it permits an "exception" *to the statutory fee limitation* if the presiding (Superior Court) judge recommends, and the (Superior Court) Chief Judge approves, a higher figure, taking into account various considerations also set forth in Subsection D(2)(c).

With respect to the propriety of counsel's appearing here as a next-friend plaintiffs, the Second Opposition does not dispute the Second Motion's arguments (at pp. 7-8) that a challenge to such appearances are appropriately to be considered at this point, and that since each of the minors has been appointed guardians <u>ad litem</u>, those would be the proper representatives in the absence of their disqualification by the court in favor of counsel here. Neither does the Opposition contest the Second Motion's contention (at pp. 8-9) that the interests of the two attorneys are not those of the minors for whom they purport to appear.

---

[5] See D.C. Code §16.2326.01(f)(1):

> Claims for compensation and reimbursement in excess of the maximum amount provided in subsection (b) may be approved for extended or complex representation when the payment is necessary to provide fair compensation. The request for payment shall be submitted by the attorney for approval by the chief judge of the Superior Court of the District of Columbia upon recommendation of the presiding judge in the case or, in cases before the District of Columbia Court of Appeals, approval by the chief judge of the District of Columbia Court of Appeals upon the recommendation of the presiding judge in the case.

To prop up their claim to party status, the Plaintiffs do assert that while "DCPS is required to appoint surrogates for wards of the District of Columbia," DCPS "does not have a system in place to appoint surrogates for ward." Second Opposition, p. 4. That statement, however, is simply wrong. See, e.g.,

http://www.k12.dc.us/dcps/specialed/dcpsspecedhome.html

Finally, the Plaintiffs essentially argue that, since 20 U.S.C. § 1415(i)(3)(B)(1) permits an award of attorneys' fees to a "parent," and because 20 U.S.C. §1401(23)(B) defines a "parent" as "a guardian," counsel can properly appear as a next-friend plaintiff here. Second Opposition, pp. 7-8. But in fact, Plaintiffs' counsel is not the minors' "guardian" in any legally consequential sense here. As Plaintiffs themselves note at one point (Second Opposition, p. 3), "CFSA is the legal guardian of the minor Plaintiffs who are wards of the District of Columbia." And the Plaintiffs do not dispute that guardians <u>ad litem</u> were also appointed for each of the minors by the Superior Court.

Yet without persuasive explanation or legal support, the Second Opposition contends that Plaintiffs' counsel's status as "educational advocates" supercedes both other "guardians" for purposes of IDEA, and in priority for purposes of bringing this action. The Defendant submits that the mere assertions of such procedural rights and capacity do not establish their truth or vitality. Moreover, such claims to "guardian" status are inconsistent with D.C. Code §16-2372 – which established the "special advocate " program under which these counsel were appointed – as compared with D.C. Code §16-2304(b)(5), which provides for appointment of a guardian ad litem generally "charged with the representation of the child's best interests."

11

Contrary to the Plaintiffs' claim (Second Opposition, p. 8), the Defendant is not seeking to "pigeon-hole the Plaintiffs into one of two categories."[6] The Defendant contends that Plaintiffs' counsel has neither specific authority from the Superior Court, nor the capacity required by the Federal Rules, to appear as plaintiffs in this case.

### B.  The Plaintiffs' assertion of estoppel is meritless.

While it does not relate the argument to the issue of Plaintiffs' counsel appearing in *this* action in *this* Court, the Second Opposition (p. 5) does contend that the Defendant should be estopped from contesting the legitimacy of claims to DCPS for payment of attorneys' fees, since DCPS has issued some payments to appointed counsel in the past, and "[t]he Defendant has never argued that the court appointed educational advocates do not have the authority to bring such claims."  However, whether viewed as an assertion of equitable estoppel or promissory estoppel (it is not said which), the Plaintiffs' arguments fail.

As a general matter, "the case for estoppel against the government must be compelling, and will certainly include proof of each of the traditional elements of the doctrine . . . ." ATC Petroleum, Inc. v. Sanders, 274 U.S.App.D.C. 12, 860 F.2d 1104, 1111 (1988).  And the "elements of estoppel include: (1) a false representation; (2) a purpose to invite action by the party to whom the representation was made; (3) ignorance of the true facts by the party; (4) reliance; and (5) a showing of an injustice and a lack of undue damage to the public interest." Washington Bancorporation v. Federal Deposit Insurance Corporation, No. 95-1340, 1996 U.S. Dist. Lexis 3876, at *47 (D.D.C. Mar.

---

[6] It is true, however, that to the extent Plaintiffs' counsel seeks to cloak themselves in the mantle of "parent" under IDEA, they face the bar to attorneys' fees that flow from that status. See, e.g., Doe v. Board of Educ., 165 F.3d 260 (4th Cir. 1998); Woodside v. Sch. Dist of Phila. Bd. Of Educ., 248 F.3d 129 (3d Cir. 2001).  They may not, indeed, be both "parent"/party and paid counsel.

12

19, 1996) (citing <u>ATC Petroleum, Inc. v. Sanders</u>, <u>supra,</u> 860 F.2d at 1111).[7]  No such showings have been made here.

     Moreover, estoppel will not lie against the Government in the absence of a showing of "affirmative misconduct."  Cf., e.g., <u>Larouche v. Federal Election Commission</u>, 28 F.3d 137, 142 (D.C. Cir. 1994) ("A private party asserting estoppel against the United States Government must demonstrate . . . that the latter has engaged in "affirmative misconduct"[citing <u>Conax Florida Corp. v. United States</u>, 824 F.2d 1124, 1131 (D.C.Cir. 1987)]).[8]  As recently observed in <u>Artis-Bey v. District of Columbia</u>, 884 A.2d 626, 638  (D.C. 2005), where a litigant similarly challenged the District's right to advance a failure-to-exhaust-administrative-remedies argument:

> It is "well established" . . . that "equitable estoppel will not lie against the Government as against private litigants," unless there is some finding of affirmative misconduct.  *District of Columbia v. Greene,* 806 A.2d 216, 222 n.8 (D.C. 2002)(quoting *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 419 . . . (1990).

     As in <u>Artis-Bey</u> and <u>Larouche,</u> the Plaintiffs here do not assert "affirmative misconduct" by the District.  DCPS payments might well have been made as a matter of policy judgment, or based on a mistaken view of the applicable law.  Neither circumstance could reasonably be interpreted as "affirmative misconduct."  And it is no

---

[7] See also <u>Kosakow v. New Rochelle Radiology Associates</u>, 274 F.3d 706, 725 (2d Cir. 2001) ("Under federal law, a party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment.")(citing <u>Heckler v. Community Health Services of Crawford County, Inc.</u>, 467 U.S. 51, 59 (1984)); <u>Falcone v. Pierce</u>, 864 F.2d 226, 228 (1st Cir. 1988) ("The traditional elements of equitable estoppel are first, a material misrepresentation of a party who had reason to know of its falsity; second, reasonable reliance upon the misrepresentation; and third, some disadvantage to the party seeking to assert estoppel fairly traceable to the misrepresentation") (citing <u>Heckler</u>, 467 U.S. at 59).

[8] See also <u>Office of Personnel Management v. Richmond</u>, 496 U.S. 414, 419   (1990) ("From our earliest cases, we have recognized that equitable estoppel will not lie against the Government as against private litigants").

valid basis for barring a consideration of the arguments advanced by the Defendants in this case.

IV.   **The Exceptions to Rule 3.7 of the D. C. Rules of Professional Conduct are not Applicable to This Case.**

In the Second Motion (pp. 9-10), the Defendant argued that proceeding in this action with lawyers in the same firm acting as both plaintiffs and counsel violates Rule 3.7 of the Rules of Professional Conduct. If the claims as to which Mr. Houston and Ms. Dalton appear as plaintiffs are dismissed outright, it was pointed out, they would be examined

> . . . on the documents and details relating to (1) their appointment, and the scope of their appointment, by the Superior Court – matters that bear directly on their authority from that court to appear in this Court in this action; (2) who authorized them to institute due process proceedings at DCPS and/or with whom they had retainer or other arrangements – also matters bearing on their status as next friend plaintiffs; (3) whether there are other Superior Court-appointed representative for the children involved, and whether children's guardians at litem (or anyone else) authorized Mr. Houston and Ms. Duos to appear as next friend plaintiffs in this action; (4) the reasons why they were substituted as next friend plaintiffs for the earlier (improper) designation of CFSA; (5) whether they have requested reimbursement for services from the Superior Court and whether payments have been received.

Id.

The Second Opposition, however, asserts that their testimony would relate to an "uncontested issue," and would also represent testimony "directly related to the 'nature and value of legal services rendered'" – two exceptions to the Rule 3.7 prohibition. Second Opposition, p. 6. Concerning the "uncontested issue" claim, there are two glaring deficiencies. The Second Opposition states (at p. 6) that "the attorneys' fees owed to the Plaintiffs is an uncontested issue. . . . The Defendant has not contested the fact that these fees were earned by prevailing parties, submitted to DCPS for payment, and have not

14

been paid in full." In fact, the Defendant has conceded nothing to the Plaintiffs. It has yet even to answer the allegations in the Amended Complaint, and indeed will contest the propriety of the fee claims asserted. But more importantly, the threshold "issue" that would be pursued – as the Motion made clear – was not the fee details, but the authority and capacity of the Plaintiffs' counsel to act as plaintiffs here. And the Second Opposition itself confirms that that issue is far from "uncontested." The exception of Rule 3.7(a)(1) is plainly inapplicable.

The "nature and value of legal services" exception of Rule 3.7(a)(2) is equally unavailing. That exception essentially relates to testimony in support or defense of fee invoices – what was done, for example, by whom, at what hourly rate, etc. The testimony that would be sought by the Defendant, however, would not concern counsel's billings; that matter could be handled on the papers. As made clear in the Second Motion, the testimony sought here would concern the threshold issue of counsel's *authority and capacity to appear as plaintiffs here* – a matter that does *not* relate to the "nature and value of legal services," but addresses the propriety of counsel's presence before this Court as a party.

Plaintiffs also claim that Rule 3.7(b) would permit Mr. Houston and Ms. Dalton to withdraw, and for Mr. Dalton to continue with the litigation in any event:

> Mr. Dalton would not be precluded from continuing as counsel during the trial portion, because, pursuant to Rule 3.7(b) above, Mr. Houston and Mrs. Dalton would not be precluded from acting as advocate in the trial by Rule 1.7 or Rule 1.9 [, which] lay out the conflict of interest standard, and in this case, no conflict of interest exists.

Second Opposition, p. 7. Rule 1.7(b) provides, however, that

> . . . a lawyer shall not represent a client with respect to a matter if :
> . . . .

15

> (4) The lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to interests in . . . the lawyer's own financial, business, property, or personal interests.

That the "financial [and] business" interests of Mr. Houston, Ms. Dalton and the law firm are directly involved in this action cannot be disputed – this is an action purely to recover money for the firm and its attorneys, utilizing a next-friend plaintiff status as cover. Rule 3.7(b) does not shield the attorneys here from disqualification.[9]

## V. The Plaintiffs Do Not Dispute that, If the Amended Complaint Reflects a Constitutional Challenge to the Fee Cap, Notification to the United States is Required.

In the First Motion (at pp. 7-8), the Defendant pointed out that, if the Plaintiffs' action contemplated a challenge to the constitutionality of the statutory fee cap, the Court's notification of the United States Attorney General was required by 28 U.S.C. §2403(a).

The First Opposition (at p. 7) asserts that, indeed, "[t]he Plaintiffs seek to have this Court determine Section 327 unconstitutional."[10] And notwithstanding some

---

[9] Unlike Canfield v. Stone, 1993 U.S.Dist.LEXIS 15491 (D.D.C. 1993),cited in the Opposition (p. 10), this is not an action susceptible of a distinction between pretrial motions and the trial itself. There will be no "trial" here – this is essentially a one-step motion for attorneys' fees, ultimately to be concluded on pleadings. And if the issues of counsel's authority and capacity to appear as a party are not disposed of based on the Defendant's Motion, this action will be dealt with on pleadings, aided by whatever discovery is appropriate.

[10] While the First Motion (p. 7) pointed out that it was unclear from the Complaint what, exactly, the nature of any constitutional challenges the Plaintiffs had in mind were (the jurisdiction section of the Complaint did not recite any constitutional provision, and the two Counts expressed no such challenge), the First Opposition (p. 6-7), referencing two parts of the requests for relief, contends that "Constitutional challenges to the fee cap of Section 327 are laid out clearly," but offers to "further clarify the details" if the Court requests. At this point, Defendant submits, it cannot be known from a reading of the Amended Complaint what the Plaintiffs' position is with respect to any particular challenge to the fee cap as unconstitutional. For purposes of this reply, however, the Defendant here assumes some sort of constitutional challenge is indeed presented.

confusing commentary at page 7 of the First Opposition, the Plaintiffs do not dispute the Defendant's view of the notification requirements of 28 U.S.C. §2403(a).

The Plaintiffs teach, however, that the Defendant's dismissal motion "is not the proper avenue to request that the Court notify the United States of a Constitutional challenge," and that the matter should have been presented instead in a separate motion. First Opposition, pp. 6-7.  In fact, the Court's notification responsibility under 28 U.S.C. §2403(a) exists without regard to the parties' views or prompting, and that statute prescribes no motions process.   That the Defendant included reference to that statute in a motion to dismiss (or any other submission to the Court) is without significance, and the Plaintiffs' seeming-procedural objection is inconsequential.

### VI.    The Oppositions Highlight the Need to Dismiss Certain of the Claims Herein as Duplicative of Those in Another Action.

In the course of chiding Defendant's counsel for not having "read the Complaint" (First Opposition, p. 5), the Plaintiffs identified six minors in this case (R.G., L.D., V.H., T.P., D.L. and T.E.) who are also plaintiffs in another action before this Court (Bowman v. District of Columbia, Civ. No. 06-0016), and whose claims in both cases are based on the same facts and circumstances.[11]

If nothing else, in the obvious interest of judicial economy, the claims of those minors should be dismissed here, or in the Bowman action.[12]  While Plaintiffs' counsel may have different legal theories in the two cases, the fact is that in each, the Court will have to review and evaluate the same facts concerning the amount of legal fees sought,

---

[11] Compare, respectively, Amended Complaint, paras. 12-19, 68-71, 96-99, 156-159, 184-187, 280-283, with Bowman v. District of Columbia, supra, Amended Complaint, paras. 16-23, 44-47, 52-55, 68-75, 84-87, 40-43.

[12] This same issue is being identified in a simultaneously-filed reply by the Defendant in Bowman.

17

and the circumstances of DCPS' actions vis-à-vis those fees.  Neither the Court nor the Defendant should be required to duplicate their efforts with respect to the same matters.

## **CONCLUSION**

Well established precedent makes clear that, with respect to the assertion of a claim pursuant to 42 U.S.C. §1983, the Amended Complaint is clearly deficient.  Concerning the propriety of counsel's having improperly represented CFSA as a plaintiff with respect to seven students, that issue – and its consequences – have not been rendered moot by virtue of counsel's later efforts at repair.  And the Defendant's arguments concerning disqualification of counsel under Rule 3.7 have not adequately been answered.

On the unprecedented issue of Plaintiffs' counsel's appearance as a party plaintiff, the authority and capacity of Plaintiffs' counsel to do so is a threshold matter of significance and importance.  While counsel claims Superior Court authority to be a party here, the documentation relied on provides no clear support, and both the D.C. Code and the Superior Court's Rules and representation Plan are inconsistent with pursuit in this Court of fees for activities assertedly resulting from a Superior Court appointment as "educational advocate" in Family Division abuse and neglect proceedings.  Nowhere is it shown that such an appointment gave counsel free rein to initiate administrative DCPS proceedings without parent or guardian ad litem commission, and further to unilaterally assume a feigned-plaintiff status to effectuate collection in this Court.

In this regard, the Defendant believes that dismissal of the claims now brought in the name of counsel qua plaintiff must be dismissed.  At a minimum, if the Court is unclear on the scope and intent of the Superior Court's appointment of counsel as an

"educational advocate," and that court's view of the proper administration of attorneys' fees resulting from such an appointment, a referral of these matter to the Superior Court for its views should be considered before any final action here in these respects.

    Respectfully submitted,

    ROBERT J. SPAGNOLETTI
    Attorney General for the District of Columbia

    GEORGE C. VALENTINE
    Deputy Attorney General

    /s/ Edward P. Taptich
    EDWARD P. TAPTICH [012914]
    Chief, Equity, Section 2

    /s/ Maria L. Merkowitz
    MARIA L. MERKOWITZ [312967]
    Senior Assistant Attorney General
    441 4th Street, N.W.
    Sixth Floor South
    Washington, DC 20001
    (202) 442-9842
    FAX  -  (202) 727-3625

April 21, 2006