# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                           )
BARBARA GRAY,                                              )
   next friend of minor child D. E.., *et al.*,  )
                                                           )
      Plaintiffs,                 )
                                                           )
      v.                          )     Civ. No. 06 – 0144 (RMU)
                                                           )
DISTRICT OF COLUMBIA,                                      )
                                                           )
      Defendant.                  )
_____)

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The Defendant, by counsel, submits herewith its opposition to the "Plaintiffs'

Motion for a Temporary Restraining Order and Preliminary Injunction" filed March 10,

2006 ("Motion").

## BACKGROUND

As amended February 23, 2006, the Complaint herein, filed January 27, 2006,

seeks reimbursement of attorney's fees from the District of Columbia, for sixty five

individual plaintiffs, pursuant to the Individuals with Disabilities Education Act, 20

U.S.C. §1400, *et seq*. ("IDEA"), 28 U.S.C. §1331, and 42 U.S.C. §1983.  Plaintiffs claim

that they were prevailing parties in administrative hearings brought pursuant to the IDEA;

that they requested attorney's fees from the District of Columbia Public Schools

("DCPS"); that the amount requested in each case was greater than $4,000; and that

DCPS did not pay any of the Plaintiffs above the "fee cap" of $4,000 set forth in the

District of Columbia Appropriations Act of 2005.  The Amended Complaint ultimately

seeks the Court's invalidation of the statutory fee cap, and an order that the District pay

the balance between the full fee amounts requested and what they have been paid.

In the Motion, the Plaintiffs – whose Amended Complaint seeks some $200,000

in additional attorneys' fees[1] – request this Court to require the District to "freeze and not

spend $1,000,000.00 (One million dollars) of surplus funds and/or profits from District of

Columbia properties sold until this case is resolved."  Pl. Mem. at 3.   For the reasons set

forth herein, the Defendant submits that the Motion is wholly meritless and overreaching,

and should be summarily denied.

## PRELIMINARY STATEMENT

As will be shown later, the Plaintiffs have failed entirely to satisfy *any* of the four

traditional factors governing Court action on motions for immediate injunctive relief. As

a preliminary matter, however, it should be stressed that the central assumption on which

the Motion is based – that the District has, and is able to pay attorneys' fees from,

financial resources not governed by the fee cap – is demonstrably wrong.

At the outset of its Motion, the Plaintiffs acknowledge that the fee cap provision

of the District's appropriations act limits to $4,000 the amount the District may pay for

attorney's fees relating to IDEA special education proceedings.[2] Pl. Mem., p. 2.

---

[1] Plaintiffs' attorneys have already been paid $260,000.00

[2] In the Motion, the Plaintiffs refer to Section 327 of the District's FY2005 appropriations act, District of
Columbia Appropriations Act, 2005, 108 Pub. L. No. 335, 188 Stat. 1344 (2004).  Since that appropriations
act has been superseded by the FY2006 appropriations act enacted on November 30, 2005, it is Section 122
of the FY2006 act (which, as to the $4,000 fee cap amount, has the same wording) that is now at issue:

> Sec. 122.  (a) None of the funds contained in this Act may be made available to pay –
>        (1)   the fees of an attorney who represents a party in an action or an attorney who
>        defends an action brought against the District of Columbia Public Schools under the
>        Individuals with Disabilities Education Act (20 U.S.C. 1400 et seq.) in excess of $4,000
>        for that action; . . . .

However, the Plaintiffs assert that the fee cap "only applies to *appropriated funds*" – "the funds contained in [the Appropriations] Act." Id. And they proceed to posit as fact the negative pregnant: that the fee cap does *not* apply to "*non-appropriated funds.*" Pl. Mem., p. 3. Based on "the understanding of Plaintiffs' counsel" that the District "has non-appropriated funds available in its surplus and in profits gained from properties and buildings sold" – an "understanding" founded on a newspaper article and an apparent news release appended to the Motion – the Plaintiffs proceed to conclude that the remainder of their counsels' unpaid invoices for IDEA representation could be paid by the District from those "non-appropriated funds" without regard to the statutory fee cap. And to assure that the District doesn't squander those "non-appropriated funds" before Plaintiffs' counsel is paid, "the Plaintiffs seek a TRO and/or PI requiring the Defendant to freeze $1,000,000.00 . . . of non-appropriated funds and/or profits from District of Columbia properties sold until the current suit is resolved." Id.[3]

Thus, the linchpin of the Plaintiffs' theory and hopes is the notion that that there is some discrete pool of "non-appropriated funds" outside the scope of the appropriations act and the Congressionally-mandated fee cap, from which the District could pay IDEA attorneys fees in excess of that $4,000 limitation. Contrary to the Plaintiffs' assumption,

District of Columbia Appropriations Act of 2006, 109 Pub. L. 115, 119 Stat. 2396 (2005). For purposes of this opposition, the Defendant will treat the Plaintiffs' reference to Section 327 of last year's appropriations act as interchangeable with Section 122 of the current statute.

[3] Significantly, the Motion is silent with respect to Fed. R. Civ. P. 65(c), which provides that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." That an injunction "requiring the Defendant to freeze $1,000,000.00 (one million dollars) of non-appropriated funds and/or profits from District of Columbia properties sold until the current suit is resolved" would result in significant "costs and damages" to the District if such an injunction granted were ultimately determined to be "wrongful" cannot be seriously disputed. Yet there can be no reasonable belief – and there is no indication whatever in the Motion – that the Plaintiffs here would be prepared to provide such security, even if issuance of the requested injunction were deemed proper in any event.

however, *any* spending that the District may do – with funds from *any* source – must be

approved by Congressional appropriation and, as to IDEA attorneys' fees, none are

exempt from fee cap limitations.

In 1973 Congress passed the Home Rule Act[4] which provides, subject to the

power of Congress under article I, section 8, clause 17 of the U.S. Constitution,[5] that the

Council of the District of Columbia is its local legislature.  D.C. Code §1-204.04.

However, Congress limited the Council's power to enact legislation, including its ability

to authorize spending of local revenue.   Section 446 of the Act  provides that: "no

amount may be obligated or expended by any officer or employee of the District of

Columbia government unless such amount has been approved by Act of Congress, and

then only according to such Act." D.C. Code §1-204.46.   Additionally, section 603(e) of

the Act (D.C. Code § 1-206.03(a) states that:

> Nothing in this chapter shall be construed as making any change
> in existing law, regulation , or basic procedure and practice relating
> to the respective roles of the Congress, the President, the federal
> Office of Management and Budget, and the Comptroller General of
> the United States in the preparation, review, submission, examination ,
> authorization, and appropriation of the total budget of the District of
> Columbia government.[6]

---

[4] District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. No. 93-198, 87 Stat 774.  Now cited as the D.C. Home Rule Act, D.C. Official Code Section 1-201.01. *et seq.*

[5] Article I, Sec 8, of the U.S. Constitution, grants Congress the ultimate legislative authority over the nation's capital.  In Metropolitan Railroad Co. v. District of Columbia, 132 U.S. 1 (1889) the Supreme Court said that "the District of Columbia is a separate political community in a certain sense, and in that sense may be called a State; but the sovereign power of this qualified state is not lodged in the corporation of the District of Columbia, but in the government of the United States."  Id. at 9.  The Supreme Court concluded that "whilst the District may, in a sense, be called a State, it is such in a very qualified sense." *Id.*

[6] The legislative history of the D.C. Home Rule Act makes clear that the Act left in place the pre-existing Congressional appropriations process for the District government.  House Committee on the District of Columbia, 93 Cong., 2d Sess., Home Rule for the District of Columbia, 1973-1974, Background and Legislative History of H.R. 9056, H.R. 9682, and Related Bills, at 3016 (Comm. Print 1974) (Home Rule History) (referring to Joint Explanatory Statement of the Committee of the Conference).  It was Congress' intent that Congress retain "the right to review and to appropriate the entire District budget, approving of the necessary Federal payment and passing upon all reprogramming requests."  Home Rule History, supra

Further, control by the Congress over the District's budget can be found in the federal Anti-Deficiency Act, codified at 31 U.S.C. §§1341, 1342, 1349-1351 and 1511-1519, which is expressly applicable to the District government.  Section 1511 of the Act defines "appropriations" as: "(1) appropriated amounts; (2) funds; and (3) authority to make obligations by contract before appropriations." Thus, contrary to the Plaintiffs' contention that the District of Columbia has "non-appropriated funds," a million dollars of which this Court should "freeze," there is no such thing as "non-appropriated funds" available for expenditure.  And except where otherwise provided by law, "appropriations" can only be applied to the objects for which the appropriations were made.[7]

Section 1341 of the Anti-Deficiency Act prohibits "[a]n officer ….of the District of Columbia government" from making expenditures or incurring obligations in excess of available appropriations or in advance of appropriations.  The purpose of Section 1341, clearly, is to prevent government agencies from incurring financial obligations over and above those authorized in advance by Congress.  In fact, if an officer of the government, without the authority of Congress, assumes to bind the government, by an expressed or implied contract, to pay monies in excess of that provided by Congress, the contract is a

---

at 3060 (remarks of Congressman Natcher, Chairman of House Appropriations Committee Subcommittee on the District of Columbia, to the House of Representatives on the Conference Report).

[7] Both the FY2005 appropriations act to which the Plaintiffs refer and the D.C. Home Rule Act are explicit in providing for the payment of IDEA attorneys' fees only from funds appropriated by Congress.  And Section 327 of the appropriations act makes no exception to those provisions of law; indeed it expressly excludes the payment of more than the prescribed fee limit out of appropriated funds.  Section 303 of the FY2005 appropriations act provides:

> There are appropriated from the applicable funds of the District of Columbia such sums as may be necessary for making refunds and for payment of legal settlements or judgments that have been entered against the District of Columbia government.

That is the only provision in the 2005 appropriations act for the payment of awards against the District. Nowhere in the 2005 act is there provision for the payment of such awards out of other funds of the District.

nullity as far as the government is concerned. <u>Hooe v. United States</u>, 218 U.S. 322 (1910). Further, sections 1349-1351 provide for penalties, including administrative discipline, fines and imprisonment for a violation of section 1341.

Accordingly, there are no funds – "appropriated" or "non-appropriated" or any other – that the District controls that are not subject to the fee cap limitation prescribed in the District's appropriation act. The Plaintiffs' Motion essentially asks the Court to override the Anti-Deficiency Act. Yet the effect of any such directive would be to require Congress to appropriate additional funds to cover any deficiency. And it is beyond dispute that a federal court cannot order the obligation of funds for which there is no appropriation. <u>See</u>, <u>e.g.</u>, <u>Office of Personnel Management v. Richmond</u>, 496 U.S. 414 (1990).

## **ARGUMENT**

### I.    **The Applicable Standards for Injunctive Relief**

In order to obtain injunctive relief, Plaintiffs must satisfy *each* prong of the following four-part test: (1) that there is a substantial likelihood of success on the merits; (2) that there is an imminent threat of irreparable harm should the relief be denied; (3) that more harm will result to plaintiffs from the denial of the injunction than will result to the defendants from its grant; and (4) that the public interest will not be disserved by the issuance of the requested order. <u>District of Columbia v. Group Ins. Admin.</u>, 633 A.2d 2, 21–24 (D.C. 1993); <u>Barry v. Washington Post Co.</u>, 529 A.2d 319, 320–321 (D.C. 1987); <u>In re Antioch Univ.</u>, 418 A.2d 105, 109 (D.C. 1980); <u>Wieck v. Sterenbuch</u>, 350 A.2d 384, 387 (D.C. 1976); <u>Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.</u>, 182

U.S. App. D.C. 220, 222, 559 F.2d 841, 843 (1977); Virginia Petroleum Jobbers Ass'n v.

Federal Power Comm'n, 104 U.S. App. D.C. 106, 110, 259 F.2d 921, 925 (1958).

> As this Court observed within the past year:

> Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Mazurek v. Armstrong, 520 U.S. 968, 972 . . .(1997).* As the Supreme Court has said, "it frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Id. (citation omitted).

Rumber v. District of Columbia, 2005 U.S. Dist.LEXIS 16935 *7 (D.D.C.).

## II.    The Plaintiffs Are Not Entitled To The Relief Requested.

### a.    The Plaintiffs will not succeed on the merits of their claim.

The Motion characterizes the Plaintiffs' substantive legal position in this case as "two-fold." Pl. Mem., p. 4. Their first position is said to be "a Constitutional challenge to the Section 327 fee cap." Id. Yet the Plaintiffs offer *nothing* concerning their likelihood of prevailing on any "Constitutional challenge," other than a statement that, even if they do not succeed on that point, "the Plaintiffs can still prevail" on other arguments. Id. And as noted in the Defendant's recent pleadings in support of its dismissal motions herein, exactly what the Plaintiffs' "Constitutional challenge" is cannot be divined from the face of the Amended Complaint either.

The one paragraph devoted to the Plaintiffs' second legal position – an "IDEA claim and Section 1983 claim" – not only provides *no* showing of a likelihood of prevailing, it does not even make clear what the legal bases for those claims are. Id. The most that can be gleaned from the four sentences offered in the Motion is that under Section 1983, the plaintiffs must "establish that the District of Columbia has a custom or practice that is the moving force behind the alleged IDEA violations," that DCPS

assertedly has a custom or practice of nonpayment of IDEA attorneys fees over $4,000 "regardless of the ability to actually pay," and that, therefore, "there is a substantial likelihood that the Plaintiffs will prevail on the merits." Id.

Given that the District does not have "the ability to actually pay" more than $4,000 under the Congressional fee cap, the Plaintiffs simply assume a starting point contrary to law and fact.  They do not even hint at an explanation how the District's compliance with one Federal statute (the appropriations act) can represent a violation of another Federal statute (IDEA) – particularly since the Plaintiffs acknowledge that the Kaseman and Calloway decisions recognize the legal compatibility of an entitlement to fees under IDEA, but one which is limited by the appropriations act payment limitations. Nor do they explain how the District can violate their Federal civil rights by complying with specific Federal limitations on how the District may expend its funds. See Pl. Mem., p. 2 n.1.

Not only have the Plaintiffs not shown a likelihood of prevailing on the merits of legal arguments yet to be explained, their summary assertions simply make no sense.

### b.  The Plaintiffs have demonstrated no irreparable harm in the absence of injunctive relief.

An essential prerequisite to injunctive relief is a sufficient showing by the plaintiffs that they will suffer irreparable harm if injunctive relief is not granted. See, e.g., Davenport v. International Brotherhood of Teamsters, 334 U.S. App. D.C. 228; 166 F.3d 356, 360 (D.C. Cir. 1999).  See also Sampson v. Murray, 415 U.S. 61, 88–90 (1974). The movants have the burden to come forward with admissible evidence that they will suffer irreparable harm unless injunctive relief is granted. Davenport, 166 F.3d at 360.

<u>Sampson</u>, 415 U.S. at 69; <u>cf</u>. <u>White v. District of Columbia</u>, 852 A.2d 922, 925 (D.C. 2004)

> The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

<u>Sampson</u>, 415 U.S. at 91.

Here, in their one paragraph devoted to the subject, the Plaintiffs have made no injury showing whatever. Offered instead are pleading assertions that relief is necessary because the Plaintiffs "will be unable to recover the substantial amount of fees owed to them" in the absence of the requested relief because "the non-appropriated funds may be gone or unavailable by the time the Court concludes the pending case." Pl. Mem., p. 5. Even ignoring the non-existence of only-now-available "non-appropriated funds" exempt from the fee cap, there is no suggestion that, should the Court ultimately favor the Plaintiffs, that the District would not be able to satisfy any lawful judgment entered against it.

Ultimately, of course, the entire Motion must fail based on this factor. For the Plaintiffs in this action seek money – reimbursement of attorneys' fees and costs. And it is hornbook law that plaintiffs may not invoke the equity jurisdiction of a court when they have an adequate remedy at law, such as the remedy of monetary relief. Indeed, the absence of an adequate remedy at law is the essential prerequisite for equity jurisdiction. See <u>Sampson v. Murray,</u> 415 U.S. 61, 88 (1974); <u>Beacon Theatres v. Westover,</u> 359 U.S. 500, 506-507 (1959).

This Court discussed the point comprehensively in denying a preliminary injunction in <u>Rumber v. District of Columbia,</u> <u>supra</u>. In its May 31, 2005, Memorandum Opinion in that case(slip op. at 16-17), the Court stated:

> It is well-settled that economic loss alone will rarely constitute irreparable harm. <u>Wisconsin Gas Co. v . Federal Energy Regulatory Comm'n</u>, 758 F.2d 669, 674 (D.C. Cir. 1985); <u>Barton v. District of Columbia,</u> 131 F. Supp. 2d 236, 247 (D.D.C. 2001). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of s stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." <u>Va. Petroleum Jobbers Assoc. v. Fed. Power Comm'n,</u> 259 F.2d 921, 925 (D.C. Cir. 1958).

Here, the Plaintiffs – who have already been paid some $260,000 – are merely seeking additional attorneys' fees, to which they may or may not be entitled. Such an action cannot properly be the basis for the injunctive relief requested.

### c.  <u>Defendant Will Be Harmed by the Granting of the Injunction</u>

The Motion asserts that interim injunctive relief is appropriate because the District "has a surplus approximately $400,000 million" and "putting a freeze on only $1 million of the surplus until this case is resolved will not substantially harm the Defendant." Pl. Mem., p. 5. As stated above, however, the District is obligated to comply with the Anti-Deficiency Act, which bars expenditures in excess of or inconsistent with appropriations. Moreover, all of the District's funds, of any character or source, are administered within a Congressionally-approved budgetary structure (whether or not income is realized from sources other than those contemplated at the beginning of the fiscal year).

The Plaintiffs' requested relief (were it lawful) would essentially impair budget management, and require alterations of both income and expense management for a

10

variety of municipal programs. And it would do so, based solely on intuitions of "fee-cap-free-money," and assumptions of the District's future inability to satisfy lawful judgments. There is no basis whatever in the Motion for crediting any such assumptions.

### d.  Granting the relief requested would not be in the public interest

In light of the significant budgetary impact of setting aside one million dollars to cover a requested award of $200,000 (the amount sought in the Complaint), the District's ability to meet the needs of its school children and its other citizens, could be compromised should the Court grant plaintiffs' preliminary injunction. The public interest requires that a request for the commitment of an inordinate amount of public funds for a possible award of attorneys' fees, that will not reach even 20% of the amount sought in this Motion for Preliminary Injunction even if the plaintiffs were to prevail on all their Counts, and where the attorneys have already received $260,000, should be accorded the closest judicial scrutiny.

### CONCLUSION

On a motion for preliminary injunction, it is the movants' obligation to justify the court's grant of such a remedy. In this case, plaintiffs have failed to establish that this Court has the authority to grant the relief sought, or that they have a substantial case on the merits. The Plaintiffs have further failed to demonstrate that the balance of equities or the public interest favors the granting of the Motion.

For the reasons set forth above, the Plaintiffs' motion for a temporary restraining order/preliminary injunction should be denied.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Assistant Attorney General
441 4th Street, N.W.
Sixth Floor North
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625

April 25, 2006