UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BARBARA GRAY *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 06-0144 (RMU) |
| | : | | |
| v. | : | Document No.: | 8 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

DENYING THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**I.  INTRODUCTION**

The plaintiffs, minor children and their parents, guardians and court-appointed educational advocates, bring this action to collect attorneys' fees and other costs pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, and 42 U.S.C. § 1983 ("§ 1983").  The plaintiffs seek to recover attorneys' fees and costs in excess of the $4,000 District of Columbia Appropriations Act fee cap.  Pending before the court is the plaintiffs' motion for a preliminary injunction.  The plaintiffs request that the court enjoin the defendant from spending $1 million in budgetary funds until the court resolves the case.  The court denies the plaintiffs' motion for a preliminary injunction because the plaintiffs fail to demonstrate that they are likely to succeed on the merits, that they will suffer irreparable harm, or that a preliminary injunction furthers the public interest.

## II.  BACKGROUND

### A.  Factual Background

The plaintiffs are 64[1] minor children and their parents, guardians and court-appointed educational advocates.  Eleven of the 64 children plaintiffs are wards of the District of Columbia.  Am. Compl. ¶¶ 24, 32, 76, 96, 104, 136, 148, 200, 204, 212, 264.  These eleven children are represented by court-appointed educational advocates William Houston and Ellen Douglas Dalton.[2]  *Id.*  According to the caption in the complaint, the court-appointed advocates bring the instant suit as next friends.

All of the plaintiffs filed requests for due process hearings[3] to challenge actions taken by the District of Columbia Public Schools ("DCPS").  Am. Compl. ¶¶ 4, 8, 12, 16, 20, 24, 28, 32, 36, 40, 44, 48, 52, 56, 60, 64, 68, 73, 76, 80, 84, 88, 92, 96, 100, 104, 108, 112, 116, 120, 124, 128, 132, 136, 140, 144, 148, 152, 156, 160, 164, 168, 172, 176, 180, 184, 188, 192, 196, 200, 204, 208, 212, 216, 220, 224, 228, 232, 236, 240, 244, 248, 252, 256, 260, 264, 268, 272, 276, 280.  The plaintiffs allege that they were prevailing parties against DCPS in the due process hearings.  *Id.*  As such, they submitted petitions for attorneys' fees to DCPS.  *Id.* ¶¶  5, 9, 13, 17,

---

[1] Although the amended complaint lists 65 children plaintiffs, the plaintiffs' counsels' use of the word processors' copy/paste feature appears to have gotten the best of them, as the claims for plaintiff J.H. appear twice.  *Compare* Am. Compl. ¶¶ 216 - 219 *with* Am. Compl. ¶¶ 220- 223.

[2] William Houston and Ellen Douglas Dalton, both attorneys, were appointed as "Counsel for Educational Purposes" by the Family Division of the Superior Court of the District of Columbia.  Pls.' Mem. of P. & A. in Opp'n to Def.'s Mot. to Dismiss Am. Compl., Ex. 1; Praecipe (May 25, 2006). They bring the instant suit as next friends of the wards of the District of Columbia.

[3] The "IDEA guarantees parents of disabled children an opportunity to participate in the identification, evaluation, or educational placement of their children." *Calloway v. District of Columbia*, 216 F.3d 1, 3 (D.C. Cir. 2000).  Parents who disagree with the identification, evaluation, or educational placement of their children may request an administrative "impartial due process hearing." 20 U.S.C. § 1415(f).

21, 25, 29, 33, 37, 41, 45, 49, 53, 57, 61, 65, 69, 74, 77, 81, 85, 89, 93, 97, 101, 105, 109, 113, 117, 121, 125, 129, 133, 137, 141, 145, 149, 153, 157, 161, 165, 169, 173, 177, 181, 185, 189, 193, 197, 201, 205, 209, 213, 217, 221, 225, 229, 233, 237, 241, 245, 249, 253, 257, 261, 265, 269, 273, 277, 281.  The attorneys' fees petitions requested reimbursement of fees and costs in excess of $4,000.  *Id.*

Section 327 of the District of Columbia Appropriations Act of 2005 caps the District of Columbia's payment of IDEA attorneys' fees at $4,000 per action.  Pub. L. No. 108-335, 118 Stat. 1322 (2004).  The plaintiffs bring the instant suit to recover attorneys' fees in excess of the $4,000 statutory cap.[4]  *Id.*, Prayer for Relief.  In total, the plaintiffs seek $199,198.74 in allegedly unpaid attorneys' fees and costs.  *Id.*  The plaintiffs bring their claims pursuant to the IDEA and § 1983.  *Id.* ¶ 1.  The amended complaint also sets forth some constitutional claims.  Prayer for Relief ¶¶ A, C, and D.

### B. Procedural Background

The plaintiffs filed an amended two-count complaint on February 23, 2006.  The first count of the amended complaint states that "an incongruity continues to exist between Section 327 of the District of Columbia Appropriations Act of 2005 [capping attorneys' fees at $4,000] and the provision of the IDEA that permits [c]ourts to award attorney's fees" and that "[c]ourts cannot leave it up to Congress to resolve [the incongruity]."  Am. Compl. ¶ 287.  The second count of the amended complaint alleges that the attorneys' fees "cap effectively limits the access

---

[4]   Despite the statutory cap on attorneys' fees, DCPS has paid more than $4,000 in attorneys' fees to plaintiffs D.E., K.B., D.D., E.S., H.F., T.H., D.E., J.H., S.E., I.B., J.F., N.H., and T.S, Am. Compl. ¶¶ 6, 122, 126, 154, 166, 178, 182, 210, 218, 234, 242, 246, 250, 262.  With respect to plaintiffs R.G., L.D., V.H., T.P., D.L., and T.E., however, DCPS has not paid up to the $4,000 cap.  *Id.* ¶¶ 15, 19, 71, 99, 158, 187, 282.

of the District of Columbia's poor families to quality legal representation, which impairs their due process protections under the IDEA." *Id.* ¶ 288.  On March 10, 2006, the plaintiffs filed a motion for a preliminary injunction.  The court now turns to the plaintiffs' motion.

### III.  ANALYSIS

#### A.  Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates:

> (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also World Duty Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 64 (D.D.C. 2000).  It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits.  *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam).  Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor.  *CSX Transp., Inc. v. Williams*, 406 F.3d 667 (D.C. Cir. 2005) (citing *CityFed Fin. Corp.*, 58 F.3d at 747).  "An injunction may be justified, for example, where there is a particularly strong likelihood of

success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.*, 58 F.3d at 747.

Moreover, the other salient factor in the injunctive relief analysis is irreparable injury. A movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction. *CityFed Fin. Corp.*, 58 F.3d at 747 (quotation omitted). Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *Id.*

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (citation omitted). Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and tailored to remedy the harm shown. *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990) (citation omitted).

### B. The Court Denies the Plaintiffs' Motion for a Preliminary Injunction

Because the plaintiffs have not made the requisite showing on three parts of the preliminary injunction test – substantial likelihood of success on the merits, irreparable harm, and public interest – the court denies their motion. The court discusses the preliminary injunction factors individually below.

**1. The Plaintiffs Fail to Demonstrate a Substantial Likelihood of Success on the Merits**

The plaintiffs argue that they have a substantial likelihood of proving that the fee cap is constitutionally unsound and that the defendant has violated the IDEA and § 1983. The plaintiffs' motion does not make a single argument with respect to their constitutional claims, except to say that if the court concludes that the fee cap is constitutional, they can still prevail on their other claims. Pls.' Mot. at 4. Perhaps the plaintiffs' failure to argue that they are likely to succeed on the merits of their constitutional claims is a recognition of the weakness of their claims. Count 2 of the complaint alleges that the "cap effectively limits the access of the District of Columbia's poor families to quality legal representation, which impairs their due process protections." Am. Compl. ¶ 289. The plaintiffs also ask the court to conclude that the attorneys' fees cap is "an impermissible violation of a [c]ourt's right under Article III to provide an effective remedy." Am. Compl. Prayer for Relief C. But, this Circuit has already held both that the fee cap does not violate due process and that it does not constitute an impermissible limit on the court's authority to award fees. *Calloway v. District of Columbia*, 216 F.3d 1, 9 (D.C. Cir. 2000); *see also Harris v. McRae*, 448 U.S. 297, 323 (1980) (stating that "poverty, standing alone is not a suspect classification"); *Tucker v. Branker*, 142 F.3d 1294, 1300 (D.C. Cir. 1998) (same). Because this Circuit has already rejected the same constitutional arguments that the plaintiffs raise here, the court concludes that the plaintiffs do not have a substantial likelihood of success on the merits of their constitutional claims.

The court also concludes that the plaintiffs have not demonstrated a substantial likelihood of success on their IDEA and § 1983 claims. To determine municipal liability under § 1983, the district court must conduct a two-step inquiry. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). First, the court determines whether the plaintiff establishes a predicate

constitutional or statutory violation. *Id*.; *see also Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991). If so, the court then determines whether the complaint states a claim that a custom or policy of the municipality caused the violation. *Id*.; *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).

Having concluded, *supra*, that the plaintiffs fail to establish a constitutional violation, the court also concludes that the plaintiffs fail to establish a predicate statutory violation. First, the complaint cannot possibly be read to allege that the defendant has violated the Appropriations Act because the plaintiffs' entire case is based on the theory that the District of Columbia is only paying attorneys' fees up to the statutory maximum. In other words, rather than violating a statutory command, the District of Columbia is abiding by the Congressional mandates set out in the Appropriations Act.[5]

Second, the complaint also cannot be read as alleging that the defendant has violated the IDEA. The complaint alleges only that the plaintiffs submitted attorneys' fees requests to the defendant. But, only the court (and not the defendant) may award the plaintiffs reasonable attorneys' fees. 20 U.S.C. § 1415(i)(3)(B) (stating that the *court* may award reasonable attorneys' fees in any district court proceeding to enforce IDEA rights) (emphasis added). The complaint, in other words, fails to allege that the defendant is violating the plaintiffs' IDEA rights because the plaintiffs do not have a right to enforce until a court awards them attorneys'

---

[5] The court further notes that, contrary to the plaintiffs' assertion that the "[c]ourts cannot leave it up to Congress" to resolve the "incongruity that exists between [the Appropriations Act] and the IDEA," Am. Compl. ¶ 287, "reconciling inharmonious statutory directives is Congress' responsibility, not courts.'" *Calloway*, 216 F.3d at 10.

fees.[6]  Because the plaintiffs have not established a predicate statutory violation, the court concludes that the plaintiffs have not established a substantial likelihood of success on their IDEA and § 1983 claims.[7]

### 2. The Plaintiffs Fail to Show Irreparable Harm

Assuming *arguendo* that the plaintiffs were able to sufficiently demonstrate a likelihood of success on the merits of the claim, the court would nevertheless deny the request for injunctive relief because the plaintiffs have not shown irreparable harm.  The plaintiffs argue that they will suffer irreparable harm "because they will be unable to recover the substantial amount of fees owed to them."  Pls.' Mot. at 5.  In essence, the plaintiffs contends that they will suffer a financial loss if the court does not grant their motion.

But, a financial loss does not constitute irreparable injury because the financial loss can be remedied with money damages.  *Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 367 (D.C. Cir. 1999) (holding that money damages could remedy the harm caused by increased working hours and decreased benefits) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974), a wrongful discharge case that held that loss of earnings does not constitute irreparable

---

[6]   The court also notes that the plaintiffs' law firm has joined 64 separate and distinct attorneys' fees actions in one suit.  Although "[m]isjoinder of parties is not ground for dismissal of an action," FED. R. CIV. P. 21 and does not affect the court's analysis on the substantial likelihood of success, the plaintiffs' claims do not appear at first blush to meet the requirements governing permissive joinder, FED. R. CIV. P. 20.  Because the defendant has not moved for severance, however, the court does not reach the issue at this juncture.  *See also Hussain v. TCF Bank*, 2004 WL 1470282 (N.D. Ill. June 30, 2004).

[7]   Further diminishing the plaintiffs' chances of success on their IDEA claims, the IDEA states that the court may award attorneys' fees to a "guardian." 20 U.S.C. § 1415(i)(3)(B)(1).  The IDEA, however, does not define the term guardian, and the court is not confident that the plaintiffs representing the wards of the District of Columbia qualify as guardians for purposes of the IDEA.  Indeed, the plaintiffs have not yet persuaded the court that the court-appointed educational advocates may seek fees from this court instead of the court which appointed them.  *See* Superior Court Rule 42(d) and D.C. Code § 16-2326.01.

injury). It is well-settled that economic loss alone will rarely constitute irreparable harm. *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985); *Barton v. District of Columbia*, 131 F. Supp. 2d 236, 247 (D.D.C. 2001). Indeed, in this case, the plaintiffs have not even suggested that should they ultimately prevail, the defendant would not be able to satisfy any judgment. Def.'s Opp'n at 9. Because money damages can adequately compensate the plaintiffs' alleged monetary loss, the plaintiffs have not shown that they will suffer irreparable harm.

### 3. A Preliminary Injunction Might Substantially Injure Other Interested Parties

The plaintiffs argue that "putting a freeze on only $1 million of the [District of Columbia's budget] surplus . . . will not substantially harm the Defendant." Pls.' Mot. at 5. The defendant argues that even if it could lawfully comply with an order freezing parts of its surplus funds,[8] the plaintiffs' requested relief "would essentially impair budget management, and require alterations of both income and expense management for a variety of municipal programs." Def.'s Opp'n at 10-11. Without ruling on the merits of the argument that the defendant cannot lawfully comply with an order freezing part of its funds, the court concludes that interfering with the District's congressionally-regulated budget could injure the defendant because it may place it in the position of having to decide whether to comply with a congressional directive or a court order. Additionally, granting an injunction would interfere with the defendant's ability to manage its own budget. Although it is unclear whether such consequences constitute a substantial injury for purposes of the preliminary injunction test, the court notes that, at the very

---

[8] The defendant contends that it cannot lawfully pay amounts in excess of those that have already been appropriated by Congress. Def.'s Opp'n at 5 (citing the Anti-Deficiency Act, 31 U.S.C. § 1341 the Home Rule Act, D.C. Code § 1-204).

least, granting an injunction might injure the defendant.

### 4. The Plaintiffs Fail to Show That a Preliminary Injunction is in the Public Interest

The plaintiffs also contend that "the public interest favors the children of the District of Columbia receiving a free appropriate public education, as required under the IDEA." Pls.' Mot. at 6. As the defendant points out, however, the plaintiffs are requesting that the court freeze $1 million dollars when their complaint seeks slightly less than $200,000. Def.'s Opp'n at 11. Assuming *arguendo* that the plaintiffs were entitled to the $200,000, the court cannot fathom how it would serve the public interest to freeze an extra $800,000 of funds. Further, as this Circuit stated in *Calloway*, "[i]t is at least conceivable . . . that capping fees will produce additional resources for direct educational services, and that, despite limiting parents' ability to use litigation as a means of enforcing IDEA, [fee cap] will yield a net benefit for disabled children." *Calloway*, 216 F.3d at 9. Indeed, it is not up to this court to determine whether the fee cap "accords with 'common sense and the public weal.' Our Constitution vests such responsibilities in the political branches." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 195 (1978). Accordingly, the court concludes that the public interest does not favor granting an injunction. Because the plaintiffs do not meet three out of the four factors of the preliminary injunction test, the courts denies the plaintiffs' motion.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' motion for a preliminary injunction.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 6th day of March, 2007.

RICARDO M. URBINA  
United States District Judge